**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles Richard MORRIS, Defendant-Appellant.**

**No. 73-2533**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Oct. 18, 1973.

---

* Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

**1386**

Herbert Green, Jr., Dallas, Tex., for defendant-appellant.

Frank D. McCown, U. S. Atty., Ft. Worth, Tex., W. E. Smith, Asst. U. S. Atty., Ft. Worth, Tex., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Appellant Morris was indicted, tried and convicted in the district court for violation of Title 18, U.S.C. § 659, possession of goods stolen from an interstate shipment, twenty-two pairs of men's slacks. During the trial one of the government witnesses was stricken while on the stand and died a short time later the same day. Appellant moved for a mistrial. The motion was denied, a guilty verdict ensued and Morris was sentenced to a suspended two-year confinement term. The sole issue raised on

appeal has its basis in the facts surrounding the death of the witness. We affirm.

The government's first witness at trial was Mr. Herman R. Wehmeier, District Terminal Manager for Midland Trans-National Transport, the consignee of the interstate shipment from which the goods were stolen. Morris and a co-defendant Robert Theodore Willey, charged in a separate count with theft of the slacks, and tried separately, were employees of Midland. Mr. Wehmeier was called to the stand to establish the interstate character of the shipment. He identified the bill of lading, and he gave evidence as to the origin of the shipment, its destination and its interstate character. His direct testimony covered 19 pages of trial transcript, a part of which was taken up with 16 objections by defense counsel, none of which were sustained. The insubstantial nature of these objections is indicated by the fact that not one of them is claimed on brief to have been improperly overruled. Cross-examination followed for an additional 13 pages of transcript. Government counsel undertook re-direct examination of the witness covering two and one-half transcript pages, with four objections being made by defense counsel. At this point, Mr. Wehmeier indicated that he felt ill. The court called a recess and excused the jury. A doctor was summoned and within less than an hour after being stricken, Mr. Wehmeier was pronounced dead. Defense counsel of course had no opportunity to re-cross examine the witness on the subject of his re-direct. Counsel for appellant moved for a mistrial on the basis of that fact. Morris here urges that his inability to re-cross examine the witness deprived him of a fair trial and that a mistrial should have been declared because of it. He cites authorities in general holding that full cross-examination is an absolute right, not a privilege, hornbook maxims with which no one would disagree.

The right of an accused under the Sixth Amendment to confront the

witnesses against him is an absolute right. This right includes an opportunity for full cross-examination of any such witness. Pointer v. Texas, 1964, 380 U. S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923; Smith v. Illinois, 1968, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956. Furthermore, denial of the right to cross-examine absent voluntary waiver "would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." Brookhart v. Janis, 1965, 384 U.S. 1, 3, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314.

However, none of the above authorities indicate that an accused has a constitutional right to *re-cross* examine a witness. Indeed, such a claim is on distinctly different ground, since it would require that we impute constitutional dimensions to a privilege to respond on re-cross to that which the defense itself has raised on cross and to which the prosecution has responded on re-direct. Neither precedent, nor logic, nor any principle of constitutional law requires such a holding.

■ The precedents cited by appellant are supportive of this position. We undertake an examination of these authorities. "A denial of [the right of cross-examination] is usually prejudicial error. It is only after the right of cross-examination has been substantially and thoroughly exercised that the allowance of further cross-examination becomes discretionary with the trial court." Touhy v. United States, 8 Cir. 1937, 88 F.2d 930, 934, quoting Hartzell v. United States, 8 Cir. 1934, 72 F.2d 569, 585. Without serious cavil this discretionary level was attained in the court confrontation with Mr. Wehmeier, as the length of the cross-examination and the numerous objections by Morris' counsel indicate. "A full cross-examination of the witness upon subjects of his examination in chief is the absolute right, not the mere privilege, of the party against whom such witness is called, . . . ." Minner v. United States, 10 Cir. 1932, 57 F.2d 506, 512. Mr. Wehmeier was fully examined by the defense upon the rather narrow and non-controversial scope of his testimony *in chief*. The re-direct dealt only with matters gone into on cross. We are not persuaded that in these circumstances a constitutional right to re-cross examination was present.

■ Of course the denial of a right to re-cross examine, whether by court action or as a result of the unavoidable absence of the witness, might in some circumstances rise to the level of harmful error. The rule in this Circuit, put quite succinctly, is that "[a] party has a right to re-cross examination only where new matter is brought out on re-direct examination." Hale v. United States, 5 Cir. 1970, 435 F.2d 737, 749–750. See also United States v. Stoehr, 3 Cir. 1952, 196 F.2d 276. But here appellant makes no claim, as we read his brief, and the record does not reveal, that any new matter was brought out in the re-direct examination of the witness.

■ We make an additional observation. We note that the evidentiary purpose of Mr. Wehmeier's testimony was to establish the interstate nature of the shipment and to introduce a supporting document. These facts were established beyond peradventure of doubt, Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. They were corroborated fully by all the witnesses who testified. The proof of guilt was overwhelming. Accordingly, if error conceivably occurred, it clearly was harmless. In Mr. Justice Blackmun's language in Dutton v. Evans, 1970, 400 U. S. 74, 93, 91 S.Ct. 210, 222, 27 L.Ed.2d 213, 214, "The error here, if one exists, is harmless beyond reasonable doubt".

Affirmed.